IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
    *Respondent*,

    v.

SHAWN SMITH,
    *Petitioner*.

Criminal No. ELH-18-0017

**MEMORANDUM OPINION**

Defendant Shawn Smith, through counsel, filed an "Emergency Motion For Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 814. It is supported by a memorandum (ECF 814-1) (collectively, the "Motion") and multiple exhibits. The government opposes the Motion (ECF 845) and has submitted exhibits. Defendant replied. ECF 854.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

**I.  Background**

Defendant was one of nineteen defendants charged in this drug trafficking case. *See* ECF 1; ECF 157.[1] He was arrested on January 18, 2018 (ECF 101) and has been in custody since that time. *See* ECF 380 (Amended Presentence Report, "PSR").

Defendant entered a plea of guilty on October 15, 2018 (ECF 296) to a Superseding Information (ECF 291), charging conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. The plea was entered pursuant to a Plea

---

[1] The original indictment named 18 people, including defendant, and was filed on January 11, 2018. ECF 1.

Agreement.  ECF 294.  The offense carried a mandatory minimum term of imprisonment of five years, with a maximum term of 40 years.  *Id.* ¶ 3.

The Plea Agreement included a Stipulation of Facts.  ECF 294 at 9-10.  The Stipulation reflected that between July 2017 and August 2017, defendant participated in a heroin trafficking organization known as the Transformers, operating in an area of Baltimore City called "the Panyard."  *Id.*  Law enforcement used pole cameras to capture video surveillance of the defendant and intercepted wire and electronic communications of the defendant.  He was also observed conducting hand-to-hand drug transactions.  *Id.*  The defendant agreed that it was reasonably foreseeable to him that the conspiracy would distribute 100 grams or more of heroin.  *Id.* at 10.

In the Plea Agreement, the parties agreed that defendant qualified as a career offender under § 4B1.1(b) of the Sentencing Guidelines ("U.S.S.G." or "Guidelines").  *Id.* ¶ 6(a).  And, the plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence of 60 months of imprisonment.  *Id.* ¶ 8.  That corresponded to the congressionally mandated minimum sentence.

Sentencing was held on January 25, 2019.  ECF 378.  Smith, who was born in 1970, was 48 years old at the time of sentencing.  ECF 380 at 2.  He reported that he has asthma and high blood pressure.  *Id.* ¶ 66.  He also indicated that he has depression and Bipolar Disorder.  *Id.* ¶ 67.  Further, he has a long history of substance abuse.  *Id.* ¶¶ 69, 70.  In particular, defendant started using heroin at age 16.  *Id.* ¶ 70.

The PSR reflected that the defendant had 11 criminal history points.  *Id.* ¶ 39.  That equated to a criminal history category of V.  *Id.* ¶ 39.  However, defendant qualified as a career offender, based on two prior felony drug offenses.  ECF 380, ¶¶ 18, 40; *see also id.* ¶¶ 34, 37.  Therefore, the PSR reflected a final offense level of 31, and a criminal history category of VI.  *Id.* ¶¶ 21, 40.

The defendant's Guidelines called for a term of imprisonment ranging from 188 months to 235 months.

The Court imposed a sentence of 60 months of incarceration, pursuant to the C plea. The defendant received credit for time served, dating to his arrest on January 18, 2018. ECF 381.

Smith, who is now 50 years of age, is serving his sentence at FCI Fort Dix, a low security institution. He suffers from asthma, obesity, and hypertension. Smith has served about 37 months of his 60-month sentence, or roughly 60%, exclusive of good conduct credit. ECF 814-1 at 3. He has a projected release date of August 4, 2022. *Id.*

Smith sought compassionate release from the Warden. ECF 841-2. The Warden denied the request. *Id.* The government concedes that the defendant has exhausted his administrative remedies. ECF 845 at 2 n.2.

## II.     Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See,*

*e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;
(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made

4

by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to

5

U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I)  suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D).  This is the "so-called, 'catch-all' category."  *McCoy*, 981 F.3d at 276.

The  BOP  regulation  appears  at  Program  Statement  5050.50,  Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.

However, the Court may not rely on the Program Statement.  Rather, the Court must consider the Sentencing Commission's policy statements.  *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").  However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act.  Thus, it is only "directed at BOP requests for sentence reductions."  *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13).  In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283.  Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). But, compassionate release is a "rare" remedy. *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. As of February 23, 2021, COVID-19 has infected more than 28 million Americans and caused over 500,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Feb. 23, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus. But, the country has recently seen the rollout of two vaccines for COVID-19 (Pfizer and Moderna).

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of February 23, 2021, the BOP had 123,892 federal inmates and 36,000 staff. And, by that date, the BOP had administered 52,109 vaccine doses to staff and inmates. *See* https://www.bop.gov/coronavirus/ (last accessed Feb. 23, 2021).

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.  *Id.*  The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk.  *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing."  *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020).  Social distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL

2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").  Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-

FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).  Then, on March 27, 2020, Congress

passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No.

116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend

the permissible length of home confinement, subject to a finding of an emergency by the Attorney

General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued

another memorandum to Carvajal, finding "the requisite emergency . . . ."  *Hallinan*, 2020 WL

3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's]

authority to grant home confinement to any inmate . . . ."  *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help

prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented

substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to

treat those who are infected.  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954

F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the

virus's spread."

As with the country as a whole, the virus persists in penal institutions.[4]  As of February 22,

2021,  BOP reported that 1,729 inmates out of a total of 123,892 inmates, and 1,667 BOP staff out

_____

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in
recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases
Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020),
https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that,
"[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450
inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*,
N.Y. TIMES (Oct. 29, 2020),  https://www.nytimes.com/interactive/2020/us/coronavirus-us-
cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are
experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there
were 13,657 new coronavirus infections reported across the state and federal prison systems.*"*

of some 36,000 staff, currently test positive for COVID-19; 45,853 inmates and 4,710 staff have recovered from the virus; and 222 inmates and four staff members have died from the virus. Moreover, the BOP has completed 104,441 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Feb. 23, 2021). *See COVID-19*, Fed. Bureau of Prisons, https://bit.ly/2XeiYH1.

With respect to FCI Fort Dix, where the defendant is now a prisoner, as of February 22, 2021, the BOP reported that 134 inmates and 38 staff test positive for COVID-19 and 1,647 inmates and 45 staff have recovered at the facility. There has been one reported inmate death. And, at the facility, 183 staff and 161 inmates have been inoculated with the vaccine. *See* https://www.bop.gov/coronavirus/ (last accessed Feb. 23, 2021).

## IV.   Discussion

Smith has moved for compassionate release on the ground that his medical conditions render him particularly vulnerable to COVID-19. ECF 814-1.  In particular, Smith suffers from obesity, hypertension, and asthma.  His BMI is around 35.  ECF 845-2 at 41.  Moreover, defendant contends that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor his release.

The government agrees that defendant's health conditions establish extraordinary and compelling reasons to qualify him for release. ECF 845 at 8. But, the government contends that Smith poses a danger to the community and that the factors under 18 U.S.C. § 3553(a) militate against a reduction of his sentence.

Numerous courts have found that, in light of the COVID-19 pandemic, serious chronic

---

*America Is Letting the Coronavirus Rage Through Prisons*, N.Y. Times (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

medical conditions, including obesity, diabetes, and hypertension, qualify as compelling reasons for compassionate release. *See, e.g., United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Salvagno,* No. 5:02-cr-00051-LEK, 2020 WL 3410601 (N.D.N.Y June 22, 2020) (granting compassionate release to inmate whose sole medical condition is hypertension); *United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity).

Accordingly, I am satisfied that Smith satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must next consider whether, if released, Smith would pose a danger to the community.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii).  Relief is appropriate under 18 U.S.C. § 3582(c)(1)(A) only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, the Court must consider the factors under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community.

In addition, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A).  These include: (1) the nature of the offense and the defendant's

characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Defendant had numerous prior offenses that did not score points. *See* ECF 380, ¶¶ 24-31, 33. Many of his prior offenses were for possession of CDS. *Id.* ¶¶ 25, 26, 27, 29, 30, 31, 33. For the offense of possession with intent to distribute in 1995, he received a five-year sentence on January 26, 1996. *Id.* ¶ 28. The PSR does not indicate a parole or mandatory release date. But, a prisoner in Maryland is usually paroled after serving only a portion of the sentence. Defendant also received a sentence of two and a half years in March 2002 for a drug offense. *Id.* ¶ 32. He was released in October 2003. Then, in January 2006, he received a sentence of 15 years for possession with intent to distribute. But, 13 years of the sentence were suspended. *Id.* ¶ 34. In May 2008, he received a sentence of 15 years' incarceration, with 9 years suspended. And, in 2009, defendant violated his probation in the 2006 case, and received a 13 year sentence, of which 11 years, 7 months and 11 days were suspended. *Id.* [5]

As I see it, the factors under § 3553(a) and § 3142(g) weigh in favor of reducing Smith's sentence. Smith had a relatively minor role in the offense. *See* ECF 382 at 3. Further, although defendant has several prior convictions, the government recommended the mandatory minimum of five years, presumably because, in the context of this case, it recognized that the career offender Guidelines were draconian.

It is also noteworthy that Smith's incarceration in the midst of a global pandemic has

---

[5] This offense in 2008 probably led to the violation of probation in 2009 with respect to the 2006 sentence.

16

"sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

Moreover, the defendant has already served about 60% of his sentence, exclusive of good conduct credit.  As noted, he has a projected release date of August 2022. And, he could be released to a halfway house months earlier.

As I see it, Smith's incarceration since January 2018 is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Smith's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release.

### V.    Conclusion

For the foregoing reasons, I shall grant the Motion.  An Order follows, consistent with this Memorandum Opinion.

Date:   February 23, 2021                    _____/s/_____
                                             Ellen Lipton Hollander
                                             United States District Judge

17